IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ORTHOFIX US LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 3:24-cv-01464 <br> ) Judge Aleta A. Trauger |
| NIKI HOLLANDS and MODERN HEALTH SOLUTIONS LLC, | ) ) ) |
| Defendants. | ) ) ) |

# MEMORANDUM

Defendant Niki Hollands has filed a Motion for Partial Dismissal (Doc. No. 21), which, for the reasons set forth herein, will be granted.

## I. PROCEDURAL HISTORY

The Second Amended Complaint ("SAC") (Doc. No. 20) is the operative pleading. Plaintiff Orthofix US LLC ("Orthofix") brings claims against two defendants: Niki Hollands and Modern Health Solutions LLC ("MHS"). The SAC alleges breach of contract claims against both defendants, (SAC ¶¶ 47–59 (Counts I & II)), which are not at issue. At issue are two claims against Hollands: intentional misrepresentation (*id.* ¶¶ 60–67 (Count III)) and fraudulent inducement (*id.* ¶¶ 68–75 (Count IV)). Orthofix seeks compensatory and punitive damages and costs. (*Id.* at 17.) The plaintiff has attached four exhibits to the SAC, including the contract at issue in this case: the Independent Sales Representative Agreement (the "ISRA") (SAC at 18–45).[1]

---

[1] "When ruling on a motion to dismiss, courts 'may consider exhibits attached to the complaint . . . so long as they are referred to in the complaint and are central to the claims contained

Hollands has filed a Motion for Partial Dismissal (Doc. No. 21), under Fed. R. Civ. P. 12(b)(6), seeking dismissal of Counts III (intentional misrepresentation) and IV (fraudulent inducement) of the SAC, with an accompanying Memorandum (Doc. No. 22), to which Orthofix has filed a Response (Doc. No. 32) and in further support of which Hollands has filed a Reply (Doc. No. 33). An Agreed Confidentiality and Protective Order (Doc. No. 36) is in place.

## II. FACTS

Orthofix makes medical devices used in spinal surgeries that it markets to surgeons through representatives—some of whom are independent contractors and some of whom are employees. (SAC ¶¶ 7–9.) Orthofix is a Delaware limited liability company whose sole member is a Delaware corporation with its principal place of business in Texas. (*Id.* ¶ 2.) Hollands is a citizen of Tennessee and MHS is a Tennessee limited liability company whose sole member is Hollands.[2] (*Id.* ¶¶ 3–4.) Orthofix employed Hollands as a representative until 2022, when MHS entered into an exclusive sales representative agreement—the ISRA—with Orthofix to market some of Orthofix's products in East and Middle Tennessee. (*Id.* ¶¶ 11–15.) The ISRA imposed two relevant requirements on MHS. First, it required MHS and those working for it to abide by non-compete and non-solicitation provisions, which extended for one year beyond the ISRA's termination. (ISRA § VI(B), (C).) Second, it mandated that MHS require its owner and employees to execute non-competition and non-solicitation agreements before working for MHS on behalf of Orthofix and to name Orthofix as a third-party beneficiary of those agreements. (*Id.* ¶ VI(D).)

The SAC alleges that, despite MHS's agreement to market Orthofix's products exclusively, in 2024 it began to market a competitor's products and then terminated the ISRA. (SAC ¶¶ 28–

---

therein.'" *Mitchell v. City of Benton Harbor*, 137 F.4th 420, 445 (6th Cir. 2025) (quoting *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016)).

[2] The court has diversity jurisdiction under 28 U.S.C. § 1332(a).

38.) In so doing, the SAC alleges, the defendants violated the ISRA's non-solicitation and non-compete provisions. (*Id.* ¶¶ 39–41.) The SAC alleges that Orthofix lost hundreds of thousands of dollars of sales as a result. (*Id.* ¶¶ 40–41.)

As to Hollands, the SAC alleges that, when she negotiated and signed the ISRA on behalf of MHS, she misrepresented her intention, as MHS's owner, to comply with, and ensure MHS's compliance with, the ISRA's non-compete and non-solicitation provisions. (*Id.* ¶ 63.) Furthermore, the SAC alleges that, "[i]f Hollands caused MHS to not subject her to the requisite non-compete agreement," then the defendants misrepresented their intention to require all MHS sales representatives to sign the separate non-compete and non-solicitation agreements. (*Id.* ¶ 64; *see also id* ¶ 39.) Hollands' alleged misrepresentations about her intent, as MHS's owner, to abide by the ISRA, are the grounds for both the intentional misrepresentation and fraudulent inducement claims against Hollands, which she moves to dismiss. Indeed, the two claims rely on similar allegations. (*Compare* SAC ¶¶ 61–67 (intentional misrepresentation), *with id.* ¶¶ 69–75 (fraudulent inducement).)[3]

---

[3] The court pauses for a moment to mention an oddity in the SAC. It alleges both (1) that Hollands violated a non-compete and non-solicitation agreement she signed and (2) that, if in fact she never did sign such an agreement, she misrepresented that she would. Count II, for breach of contract, alleges "upon information and belief, . . . that MHS complied with its contractual obligation to require Hollands to enter into such an agreement." (SAC ¶ 57.) But Counts III and IV rely, in part, on the conditional allegation that *if* Hollands caused MHS not to require her to execute the required non-compete and non-solicitation agreement, *then* she is liable for intentional misrepresentation and fraudulent inducement. (*Id.* ¶¶ 64, 70–71.) That is, to support its breach of contract claim, Orthofix presumes that Hollands violated a contract "it has not seen . . . [but] has no reason to believe . . . was not executed." (*Id.*; *see also id.* ¶ 58 ("Assuming she signed the contract . . . Hollands is breaching . . . .").) And then it bases two other claims, in part, on the presumption that such a contract was *not* executed. (*Id.* ¶¶ 64, 70–73.) In its Response brief, the plaintiff seemingly disavows its allegation that Hollands executed a separate non-compete and non-solicitation agreement. (Doc. No. 32 at 6 ("By Hollands' own admission, she 'did not sign any noncompete agreement.'" (quoting Doc. No. 22 at 2)).) Because neither of the claims Hollands seeks to dismiss relies exclusively on the contention that "*if* Hollands caused MHS to not subject her to the requisite non-compete agreement, [then] she and MHS knew that their material

3

### III. LEGAL STANDARD

#### A. Rule 12(b)(6)

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (quoting Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 555–57. The court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016). And, while Rule 8 does not require details, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he complaint must 'contain either direct or inferential allegations respecting all the material elements [of a claim] to sustain a recovery under some viable legal theory.'" *Hollowell v. Cincinnati Ventilating Co.*, 711 F. Supp. 2d 751, 758 (E.D. Ky. 2010) (quoting *Hunter v. Sec'y of U.S. Army,* 565 F.3d 986, 992 (6th Cir. 2009)).

---

misrepresentations were false at the time Hollands agreed to and executed the ISRA on behalf of MHS" (SAC ¶ 64), the court will not belabor this point.

4

## B. Rule 9(b)

Rule 9(b) governs the standards for pleading fraud in diversity suits. *New London Tobacco Mkt., Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 410 n.10 (6th Cir. 2022) (citing *Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001)). Both intentional misrepresentation[4] and fraudulent inducement sound in fraud and therefore must be pleaded according to Rule 9(b)'s heightened pleading standards. *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 751 (6th Cir. 2014). Under Rule 9(b), a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a plaintiff's complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *City of Taylor Gen. Emps. Ret. Sys. v. Astec Indus., Inc.*, 29 F.4th 802, 810 (6th Cir. 2022) (quoting *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 478 (6th Cir. 2010) (internal quotation marks omitted)). However, plaintiffs can allege state of mind generally. Fed. R. Civ. P. 9(b).

## IV. DISCUSSION

In this case, as to both claims, the relevant alleged misrepresentation is that Hollands signed the ISRA on behalf of MHS, "affirming that she . . . would ensure that she and her company observe all contractual requirements," including ensuring that her employees would abide by ISRA's non-competition and non-solicitations provisions and ensuring that each employee would execute non-competition and non-solicitation agreements, when she had no intention to ensure such compliance. (Doc. No. 32 at 5 (citing ISRA § VI(B), (C), (D)); *see also id.* at 7 (same).)

---

[4] In Tennessee, intentional misrepresentation is alternately referred to as "fraud" and "fraudulent misrepresentation." *See Brown v. Woodbury Auto Grp. LLC*, 591 F. Supp. 3d 282, 294 (M.D. Tenn. 2022) (Campbell, J.) (citing *Amirazodi v. Capella Educ. Co.*, No. 3:21-CV-00074, 2021 WL 1946643, at *4 (M.D. Tenn. May 14, 2021) (Campbell, J.)).

5

To state a claim for intentional misrepresentation, the plaintiff must allege that:

(1) the defendant made an intentional misrepresentation of a material fact; (2) the defendant made the representation "knowingly" without belief in its truth, or "recklessly," without regard to whether it was true or false; (3) the plaintiff justifiably relied on the misrepresentation and suffered damages; and (4) the misrepresentation relates to an existing or past fact.

*BiotronX, LLC v. Tech One Biomedical, LLC*, 465 F. Supp. 3d 797, 809 (M.D. Tenn. 2020) (Campbell, J.) (first citing *Hodge v. Craig*, 382 S.W.3d 325, 343 (Tenn. 2012); and then citing *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 931 (6th Cir. 2006)).

To state a claim for fraudulent inducement, the plaintiff must allege that the defendant:

(1) made a false statement concerning a fact material to the transaction; (2) with knowledge of the statement's falsity or utter disregard for its truth; (3) with the intent of inducing reliance on the statement; (4) the plaintiff reasonably relied on the statement; and (5) the reliance resulted in an injury.

*Best Choice Roofing & Home Improvement, Inc. v. Best Choice Roofing Savannah, LLC*, 446 F. Supp. 3d 258, 279 (M.D. Tenn. 2020) (Campbell, J.) (first citing *Thompson*, 773 F.3d at 752; and then citing *Baugh v. Novak,* 340 S.W.3d 372, 388 (Tenn. 2011)).

The parties debate at length whether the alleged misrepresentation was about an "existing or past fact"—an element of intentional misrepresentation—or a misrepresentation based on the promise of future action. Hollands points to the SAC's allegation that Hollands made "a material misrepresentation of MHS's and Hollands' *intentions* to perform these duties and obligations under the ISRA." (Doc. No. 22 at 4 (quoting SAC ¶ 63 (emphasis in Doc. No. 22)).) And, Hollands argues, a defendant's false promise to perform in the future implicates promissory fraud, not intentional misrepresentation. (*Id.* (citations omitted).) Orthofix responds that Hollands made a false representation of an existing or past fact, to wit, "that she would ensure [the ISRA's] requirements were satisfied." (Doc. No. 32 at 4; *see also id* at 6 ("the Complaint specifically alleges [that] Hollands—at the time of execution—'never intended to ensure MHS' compliance with' the

6

ISRA." (quoting SAC ¶ 23)).) The defendant responds that, by the plaintiff's own description, Hollands' alleged misrepresentations are statements of future intention, not past or existing fact. (Doc. No. 33 at 1 (noting the plaintiff's use of the word "would").)

This debate is mostly academic, however, because Tennessee allows plaintiffs to base intentional misrepresentation claims on a theory of "promissory fraud," according to which "[a] future promise can support a claim for intentional misrepresentation if it is made without 'the present intention to carry out the promise.'" *Smythe v. Hysen*, No. 3:24-CV-00074, 2024 WL 4583523, at *10 (M.D. Tenn. Oct. 24, 2024) (quoting *Power & Tel. Supply Co.*, 447 F.3d at 931). *See also Brown*, 591 F. Supp. 3d at 295 ("As in an intentional misrepresentation action, fraudulent inducement claims may involve either false statements of past or present facts or false promises made without the present intent to perform." (citing *Loew v. Gulf Coast Dev., Inc.*, No. 01-A-019010CH00374, 1991 WL 220576, at *7 (Tenn. Ct. App. Nov. 1, 1991))). And, under Tennessee law, the tests for fraudulent inducement and intentional misrepresentation are "essentially the same." *Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*, 823 F. Supp. 2d 786, 813 (W.D. Tenn. 2011) (citing *Baugh*, 340 S.W.3d at 388).

But the precise relationship among and between intentional misrepresentation, promissory fraud, and fraudulent inducement is less than crystal clear. As our sister court recently noted:

> Some federal courts in Tennessee treat promissory fraud as a separate claim from an intentional misrepresentation claim, while others treat promissory fraud as a theory under which to allege an intentional misrepresentation claim. And some courts treat promissory fraud and fraudulent inducement as the same claim, while others do not.

*HYC Logistics, Inc. v. Louise Paris, LTD*, No. 2:24-CV-02191-TLP-ATC, 2025 WL 1400007, at *8 (W.D. Tenn. May 14, 2025) (collecting cases) (citations omitted) (adding that "[t]he Tennessee Supreme Court has not clarified these issues"). For present purposes, however, the court has no need to decide whether the plaintiff's claims are correctly characterized because—whether they

7

are separate claims or not, and whether promissory fraud supplants or supports one or both of them—both rely on the allegation that, when Hollands signed the ISRA on behalf of MHS, she did not intend to adhere to it or ensure that MHS adhered to it. That allegation, however, is entirely conclusory and unsupported by any concrete fact alleged in the SAC.

That is, the problem for the plaintiff, as to both counts at issue, is that the SAC alleges no facts from which it could reasonably be inferred that, when Hollands signed the ISRA on behalf of MHS, she did not intend to adhere to its requirements or ensure that MHS adhered to its requirements. In Orthofix's Response brief, it directs the court to seven paragraphs of the SAC and to provisions of the ISRA to support its assertion regarding Hollands' intent when she signed the ISRA. As the plaintiff puts it, "the Complaint contains a number of facts that, accepted as true, demonstrate Hollands' present intention, upon signing the ISRA, to falsely convey that she would observe its express requirements and refusal to do so." (Doc. No. 32 at 7–8 (first citing SAC ¶¶ 17–23; and then citing ISRA § VI(B), (D)).) However, provisions of a contract alone cannot support an allegation that a party did not intend to perform. In addition to the plaintiff's citation to the ISRA, three paragraphs the plaintiff cites for support are merely excerpts of the ISRA. (SAC ¶ 17 (ISRA § VI(B)); *id.* ¶ 18 (ISRA § VI(C)); *id.* ¶ 19 (ISRA § VI(D)).) Two further paragraphs merely paraphrase the ISRA. (*Id.* ¶¶ 20–21.) The next paragraph states that, by signing the ISRA on behalf of MHS, "Hollands represented that she . . . would ensure MHS' performance under the terms and conditions of the agreement." (*Id.* ¶ 22.) That is, the plaintiff alleges that, by signing the contract, the signatory agreed to its terms. The final cited paragraph states that, when the parties signed the ISRA, Orthofix did not know that the defendants would breach or that Hollands "never intended" to comply with the ISRA. (*Id.* ¶ 23.) And, in a footnote, the SAC alleges, on information and belief, that Hollands ensured that MHS' associates—as distinct from Hollands, MHS' owner—executed

8

the required non-solicitation and non-compete agreements.[5] (SAC ¶ 23 n.2.) In sum, the allegations in the SAC cited by the plaintiff to support its argument that it has plausibly alleged that Hollands never intended to abide by their contract are (1) excerpts and paraphrases of the contract itself, (2) that Hollands signed the contract, (3) that Hollands ensured that others adhered to the contract's requirements, and (4) a conclusory statement that Hollands did not intend to abide by the contract. Together, those facts are insufficient for the court to plausibly infer Hollands' lack of intent.

The only further support the SAC adduces for its contention that Hollands misled Orthofix when she signed the ISRA is the defendants' eventual breach. The SAC makes this explicit through variations of the same assertion.[6] And the plaintiff reiterates this point in its Response brief. (*See* Doc. No. 32 at 10 ("That Hollands did not, in fact, execute these conditional non-compete and

---

[5] The plaintiff argues that the fact that MHS sales representatives other than Hollands executed the required agreements "demonstrates that she fully understood the obligation and intentionally failed to do so herself, all of which supports the reasonable inference that she had no present intention to follow through with this obligation." (Doc. No. 32 n.4.) First, as the court has noted, the plaintiff appears to argue that Hollands *did* sign the required non-compete and non-solicitation agreement in her individual capacity (SAC ¶ 57) before arguing that she "intentionally failed to" sign such an agreement. (Doc. No. 32 at 10 n.4). But putting that aside, the plaintiff does not explain how partial compliance with a contract provision is meant to show that, at the time Hollands signed the ISRA on behalf of Orthofix, she misrepresented her intention to fully comply.

[6] *See, e.g.*, SAC ¶ 62 ("If she intentionally failed to sign the agreement required by Section VI.D of the ISRA, her representation was false and intentional."); *Id.* ¶ 64 ("If Hollands caused MHS to not subject her to the requisite non-compete agreement, she and MHS knew that their material misrepresentations were false at the time Hollands agreed to and executed the ISRA on behalf of MHS."); *id.* ("These intentional misrepresentations remained false if MHS and Hollands failed to undertake any action to ensure that Hollands executed the requisite agreement in accordance with the ISRA's unambiguous terms."); *id.* ¶ 70 ("If she failed to [ensure MHS' contractual duties were carried out] . . . her representations were false and intentional."); *id.* ¶ 71 ("If Hollands[] intentionally failed to honor her representation that she would ensure MHS' compliance with the ISRA's non-competition and non-solicitation requirements for its owners and Associates, including Hollands, she made a false statement material to the Orthofix's execution of the ISRA."); *id.* ¶ 73 ("If Hollands failed to require MHS to honor its contractual obligations . . . Hollands intended to induce Orthofix's reliance upon her misrepresentations[.]").

9

non-solicit agreements evinces the falsity of her representation upon signing the ISRA.").) But "[t]he intention of the promisor not to perform an . . . agreement cannot be established solely by proof of its nonperformance." Restatement (Second) of Torts § 530, Commend (d) (1977). In this case, the SAC does not plead facts that show that, "at the time the promise was made," Hollands "had no intention to carry it out." *Jack Tyler Eng'g Co. v. Colfax Corp.*, No. 10-2373-STA, 2011 WL 6372827, at *4 (W.D. Tenn. Dec. 20, 2011). Put another way, "the mere fact that the promisor failed to perform the promised act is insufficient by itself to prove fraudulent intent. This is because . . . not every broken promise starts with a lie." *Clemente v. Mercury Air Ctr.-Nashville, LLC*, No. 3:23-CV-00831, 2025 WL 1363107, at *4 n.6 (M.D. Tenn. May 9, 2025) (quoting *Styles v. Blackwood*, No. E2007-00416-COA-R3-CV, 2008 WL 5396804, at *7 (Tenn. Ct. App. Dec. 29, 2008)) (citation modified).

Hollands analogizes to *Smythe v. Hysen*, which is directly on point. There, this court stated that a plaintiff cannot rely on the defendant's eventual failure to keep a promise as support for its claim that the defendant made the promise without the intent to keep it. *Smythe*, 2024 WL 4583523, at *12 (dismissing the intentional misrepresentation claim).

Orthofix attempts to distinguish *Smythe*. First, Orthofix argues that, in *Smythe*, "there was considerable evidence in the record that the court considered in its decision." (Doc. No. 32 at 8.) While it is true that, in *Smythe*, the court considered two contracts appended to the complaint in its discussion of intentional misrepresentation, *see Smythe*, 2024 WL 4583523, at *11, in this case the court has also considered a contract the plaintiff appended to the Complaint. More importantly, the plaintiff does not explain why this supposed difference between the two cases would be relevant. Second, Orthofix argues that *Smythe*'s analysis is inapposite because *Smythe* concerned only a claim for intentional misrepresentation, not fraudulent inducement. (Doc. No. 32 at 9.) But

10

as the court has explained, a promise made with the intent to break it can support both intentional misrepresentation and fraudulent inducement. And both claims require the plaintiff to adduce *some* facts in support of its assertion that, at the time Hollands signed the ISRA, she intentionally made a misrepresentation about her intention to abide by it.

The court is mindful that Rule 9(b) permits allegations regarding intent to be "alleged generally." Fed. R. Civ. P. 9(b). *Accord BiotronX*, 465 F. Supp. 3d at 810 (finding that the plaintiffs had stated a claim for promissory fraud where the complaint "describe[d] three items of 'circumstantial evidence' as to Defendants' alleged intent not to carry out their promise when made"). Nevertheless, "pleadings regarding the conditions of a person's mind, including malice and intent, remain bound by the plausibility requirement of Rule 8." *Mourad v. Marathon Petrol. Co.*, 654 F. App'x 792, 798 (6th Cir. 2016). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). A complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557). This standard does not require detailed factual allegations, but it does require "more than labels and conclusions, and a formulaic recitation of a cause of action's elements." *Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020) (quoting *Twombly*, 550 U.S. at 555). Thus, "the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation 'plausible on its face.'" *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678)).

While the SAC states that Hollands made a false promise of future action without the present intention to perform, it alleges no facts in support. It is black letter law that reciting the

element of a cause of action is insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678; *see also HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) ("[O]ur Circuit has made clear that a legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, and that a recitation of the elements of the cause of action is insufficient to state a claim for relief.") (citation modified). Thus, the court finds that Orthofix has failed to plausibly allege facts sufficient to support Counts III and IV of the SAC, and they will be dismissed.

The court turns last to a separate argument the plaintiff makes. In its Response brief, Orthofix argues that Hollands, as MHS' owner, is personally bound by the ISRA and thereby subject to its non-solicitation provision, among others. (Doc. No. 32 at 10–14.) But Orthofix does not explain how this issue bears on the allegations of intentional misrepresentation and fraudulent inducement, which are before the court, rather than the breach of contract claim, which, as the defendant points out, is not before the court. (Doc. No. 33 at 3.) The court will therefore not rule on whether Hollands is personally bound by the ISRA.

In this same section of its Response brief, Orthofix requests "[i]n the alternative . . . that this Court grant leave to file a Third Amended Complaint clarifying the ISRA's express, personal obligations imposed on Hollands." (Doc. No. 32 at 13.) "[T]he Sixth Circuit strongly disfavors requesting leave to amend pleadings in responsive briefs to motions to dismiss, as opposed to filing a separate, detailed motion to amend." *Rossi v. SunTrust Mortg., Inc.*, No. 3:11-CV-01045, 2011 WL 6888530, at *7 (M.D. Tenn. Dec. 29, 2011) (Nixon, S.J.) (citing *La. Sch. Emps.' Ret. Sys.*, 622 F.3d at 486). Moreover, Local Rule 15.01(a)[7] provides that "[a] motion to amend a pleading

---

[7] The Local Rules were updated after motion to dismiss briefing, but L.R. 15.01(a) was not altered.

must (1) [d]escribe the reasons supporting the proposed amendments and the substance of the amendments sought, and include as an appended exhibit the signed proposed amended pleading; and (2) . . . state that counsel for the moving party has conferred with all opposing counsel about the proposed amendment and whether or not the motion to amend is opposed." The plaintiff's request to amend the pleadings will be denied. If the plaintiff would like to amend the pleadings, it may so move in compliance with the Local Rules.

## V. CONCLUSION

For the forgoing reasons, the defendant's Partial Motion to Dismiss will be granted. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge

13